UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

                              Plaintiff,

        – against –

CHELSEA BREWING COMPANY, LLC,

                              Defendant.

**OPINION AND ORDER**

12 Civ. 1544 (ER)

Ramos, D.J.:

      The United States of America ("Plaintiff" or the "Government") brings the instant action

to "reduce to judgment," i.e., collect, the unpaid taxes, penalties, interest and fees assessed by the

Internal Revenue Service ("IRS") against Chelsea Brewing Company, LLC ("Chelsea Brewing"

or the "Defendant") for its failure to comply with federal tax obligations during numerous tax

periods dating back to 2001.  The Federal Insurance Contributions Act ("FICA"), 26 U.S.C. §

3111(a), and the Federal Unemployment Tax Act ("FUTA"), 26 U.S.C. § 3301, each require

corporate employers to pay taxes on wages paid to their employees.  The Government asserts

that as of September 23, 2013, Defendant's outstanding FICA[1] and FUTA tax liabilities totaled

$831,126.67 and $10,372.12, respectively.  Compl., Doc. 1; Pl.'s 56.1 Stmt. ¶¶ 131-32, Doc. 22.

---

[1] As discussed *infra*, in the complaint and its briefing, the Government uses "FICA taxes" as an umbrella term that encompasses all taxes reported on IRS Form 941.  *See, e.g.*, Gould Decl. ¶ 2, Doc. 21.  Defendant objects to the characterization of all taxes on Form 941 as "FICA taxes."  Def.'s Opp. 9, Doc. 26 (citing Brody Decl. ¶¶ 1-14, Doc. 28).  The Government requests leave to amend its complaint to clarify this point, pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, to the extent that the Court deems necessary.  Gov't Reply Br. 10 n.6, Doc. 32.

Currently before the Court is Plaintiff's motion for partial summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure.  Doc. 18.  For the reasons set forth below, the motion is GRANTED in part and DENIED in part.

## I.   Background

The following facts are undisputed except where otherwise noted.

Defendant, a brewing company located at the Chelsea Piers, describes itself as "Manhattan's only waterfront brewing company since 1995."  Gould Decl. Ex. 3; Def.'s Opp. 2. Currently, Chelsea Brewing "has an outstanding balance of unpaid taxes due to the IRS, but cannot specify how much it thinks it owes to the IRS."  Def.'s Resp. Pl.'s 56.1 Stmt. ¶ 3, Doc. 31.  Chelsea Brewing concedes that, for numerous tax periods between 2001 and 2010, when it lacked sufficient funds to pay both its employees and the IRS, it knowingly elected to pay its employees instead of the IRS.  *Id.* ¶ 4.

### A.  Defendant's FICA Tax Liabilities

Chelsea Brewing is required to pay FICA taxes and file FICA returns on a quarterly basis, using IRS Form 941, titled "Employer's Quarterly Federal Tax Return."  *Id.* ¶ 1.  In support of its motion, the Government has submitted two declarations from Spencer Gould, the IRS Revenue Officer responsible for this case.  Mr. Gould explains that employers use IRS Form 941 to report FICA taxes, such as social security and Medicare taxes, as well as non-FICA taxes, including employee contributions and income taxes withheld by the employer.  Supp. Gould Decl. ¶¶ 3-13, Doc. 33.  Mr. Gould represents that "the IRS analyzes each Form 941 return as a whole" and makes an assessment "against the entire return."  *Id.* ¶ 13.  In Defendant's case, the IRS assessed penalties against Chelsea Brewing for, among other things, failure to timely deposit federal taxes, including FICA and non-FICA income withholding taxes reported on Form 941,

failure to pay taxes, failure to timely file returns and bouncing checks made payable to the IRS.

*Id.* ¶¶ 14-15.

Based upon certified copies of IRS records, the Government contends that Defendant has

an outstanding balance of unpaid FICA taxes, including interest and penalties, as follows[2]:

| FICA Tax Period End Date | Amount Due |
|---|---|
| September 30, 2001 | $115,564.19 |
| December 31, 2004 | $55,393.12 |
| March 31, 2005 | $40,338.78 |
| June 30, 2005 | $62,893.83 |
| September 30, 2005 | $90,644.69 |
| December 31, 2005 | $55,901.90 |
| June 30, 2007 | $60,504.38 |
| September 30, 2007 | $91,126.21 |
| December 31, 2007 | $70,901.40 |
| March 31, 2008 | $55,428.29 |
| June 30, 2008 | $5,138.01 |
| September 30, 2008 | $34,084.46 |
| December 31, 2008 | $16,751.59 |
| June 30, 2009 | $1,507.52 |
| September 30, 2009 | $89.14 |
| December 31, 2009 | $30,394.89 |
| September 30, 2010 | $914.47 |
| December 31, 2010 | $39,674.81 |
| March 31, 2011 | $1,589.92 |
| June 30, 2011 | $2,285.07 |
| **TOTAL** | **$831,126.67** |

1.        **The FICA Tax Period Ending September 30, 2001**

On December 10, 2001, the IRS assessed tax liabilities against Chelsea Brewing for the

FICA tax period ending September 30, 2001.  Def.'s Resp. Pl.'s 56.1 Stmt. ¶ 7.  Chelsea

Brewing does not dispute that it owes unpaid taxes for this period; rather, it asserts that

---

[2] Pl.'s 56.1 Stmt. ¶¶ 15, 20, 25, 30, 35, 40, 45, 50, 55, 60, 65, 70, 75, 80, 85, 90, 95, 100, 105, 110, 131.

collection of this debt is time-barred.  *Id.* ¶ 15.  The Government claims, and Defendant disputes, that Chelsea Brewing entered into—and then defaulted upon—three installment agreements[3] for the payment of its taxes for this period.  *Id.* ¶¶ 10-12; Gould Decl. ¶¶ 9-11.

The Government deposed Patrick Greene, the managing partner of Chelsea Brewing, pursuant to Federal Rule of Civil Procedure 30(b)(6).  Mr. Greene testified that he was generally aware that Chelsea Brewing had entered into multiple installment agreements with the IRS, but he could not recall how many such agreements, their dates, or whether Chelsea Brewing defaulted on some or all of them.  Boeving Decl. Ex. A (Greene Dep. Tr. 17:13 – 19:25), Doc. 19.  Yet, he also conceded that he was not aware of any installment agreement with the IRS on which Chelsea Brewing did *not* default.  *Id.* at 18:15 – 18:18.

Chelsea Brewing's IRS Account Transcript for the FICA tax period ending September 30, 2001 states, in relevant part, as follows (*see* Gould Decl. Ex. 3 at USA675-76):

| Code | Explanation of Transaction | Date |
|------|----------------------------|------|
| 971 | Installment agreement established | 5-31-2002 |
| 971 | No longer in installment agreement status | 7-28-2003 |
| 971 | Tax period blocked from automated levy program | 10-20-2003 |
| 582 | Lien placed on assets due to balance owed | 10-3-2003 |
| 971 | Installment agreement established | 11-14-2003 |
| 971 | Installment agreement established | 11-25-2003[4] |
| 971 | No longer in installment agreement status | 3-8-2004 |
| 582 | Lien placed on assets due to balance owed | 3-3-2006 |
| 971 | Installment agreement established | 4-13-2006 |
| 971 | Pending installment agreement | 1-23-2008 |
| 971 | No longer in installment agreement status | 3-31-2008 |
| 971 | Collection due process Notice of Intent to Levy – return receipt signed | 6-12-2008 |
| 971 | Collection due process Notice of Intent to Levy – issued | 6-12-2008 |

[3] The Internal Revenue Code provides that the Secretary of the Treasury may enter "written agreements with any taxpayer under which such taxpayer is allowed to make payment on any tax in installment payments if the Secretary determines that such agreement will facilitate full or partial collection of such liability."  26 U.S.C. § 6159(a).

[4] Mr. Gould represents that the installment agreement entry for November 25, 2003 is duplicative of the November 14, 2003 entry.  Gould Decl. n.4.

4

The IRS's Certificate of Official Record for Chelsea Brewing for the tax period ending

September 30, 2001 documents installment agreements on December 19, 2001, May 31, 2002,

November 14, 2003, November 25, 2003 and April 13, 2006, and include entries on July 28,

2003, March 8, 2004, and March 31, 2008 stating "reverses active installment agreement." *See*

Gould Decl. ¶ 3, Ex. 1.  According to Mr. Gould, the notations "reverses active installment

agreement" and "no longer in installment agreement status" in the IRS records indicate that the

taxpayer has defaulted on the agreement and that it was terminated. *Id.* ¶ 9; Supp. Gould Decl.

¶¶ 19-20.

Mr. Gould represents that "it was the custom and routine practice of the IRS" to provide

taxpayers with written notice 30 days prior to termination of an installment agreement, and that,

logistically, the IRS's automated system generates and mails this notice as a matter of course

when a taxpayer fails to comply with the terms of an installment agreement.  Supp. Gould Decl.

¶ 23.  Mr. Gould states that in this case, the IRS provided Defendant with the customary written

notice 30 days prior to termination of each of the three installment agreements. *Id.*  Although the

Government has not provided copies of any notice letters that were actually sent to Chelsea

Brewing,[5] it has produced "IRS Integrated Data Retrieval System Masterfile" records (Supp.

Gould Decl. Ex. E).  Mr. Gould explains that (1) presence of the code "CP 523" in these records

indicates that the IRS issued notices of termination for each of the three installment agreements,

and (2) the code "TC 971 AC 163" shows that the three agreements were respectively terminated

on July 28, 2003, March 8, 2004 and March 31, 2008. *Id.* ¶ 24, Ex. E at USA727-30.

Finally, it is undisputed that on June 12, 2008, the IRS sent a notice of intent to levy and

a collection due process notice for the September 30, 2001 tax period.  Def.'s Resp. Pl.'s 56.1

---

[5] The Government only provides a blank form "CP 523" notice letter as an example of what the IRS typically sends.
Supp. Gould. Decl. Ex. D.

Stmt. ¶ 29.  Mr. Gould claims that "[t]his further confirms that the three installment agreements [were] terminated" because such notices are only issued 30 days or more after agreements are terminated, in accordance with the Internal Revenue Manual.  Supp. Gould Decl. ¶ 21.

2.      **Disputes Applicable to Multiple FICA Tax Periods**

Defendant disputes the remainder of the Government's factual assertions concerning its FICA tax liabilities in three general respects.

First, Defendant claims that in all instances, the amount of unpaid FICA taxes sought by the Government is higher than the amount of FICA tax liabilities that it owes.  *See, e.g.*, Def.'s Resp. Pl.'s 56.1 Stmt. ¶ 3.  Defendant claims that it reported FICA taxes *and* non-FICA taxes on all of its Form 941 filings.  Brody Decl. ¶¶ 11-14, Doc. 28; Greene Decl. ¶¶ 3-4, Doc. 27. Defendant claims that the Government's calculations of all of its so-called "FICA" tax liabilities are erroneous because the IRS made such calculations based upon *all* of the taxes reported by Chelsea Brewing on Form 941, and include penalties for Defendant's failure to pay or deposit non-FICA taxes.  *See, e.g.*, Def.'s Resp. Pl.'s 56.1 Stmt. ¶¶ 1, 3, 6, 7, 16, 17, 20, 21, 25, 26, 27, 30, 31, 32, 36, 40, 41, 67, 102, 107 (citing Brody Decl. ¶ 13 and Greene Decl. ¶¶ 3-4).

Second, Defendant disputes the accuracy of the IRS's assessment of its FICA tax liabilities for certain tax periods based upon a declaration submitted by Mr. Greene (*see* Def.'s Resp. Pl.'s 56.1 Stmt. ¶¶ 60, 70, 75, 90, 100 (citing Greene Decl. ¶ 5)), in which he represents that "[d]uring the years 2008 – 2011," Chelsea Brewing issued "multiple salary checks" to him, totaling approximately $35,000, but he never cashed them.  Greene Decl. ¶ 5; Def.'s Opp. 10-11.[6]  Due to "an apparent accounting error," Defendant reported these un-cashed checks on its

---

[6] Defendant claims that it is "in the process of obtaining documentation to evidence these un-cashed checks" and asks that the Court to grant it an extension of time "to bring forth such evidence."  Def.'s Opp. 11.

filed tax forms, which in turn "skewed" the IRS's calculations of liability.  Def.'s Opp. 10-11.

Mr. Greene seeks "a credit for these amounts."  Greene Decl. ¶ 5.

 Third, based on additional statements by Mr. Greene, Defendant claims that it has a

"reasonable cause" defense to all of the tax penalties assessed against it.  *See* Def.'s Resp. Pl.'s

56.1 Stmt. ¶¶ 15, 20, 25, 30, 35, 40, 45, 50, 55, 60, 65, 70, 75, 80, 85, 90, 95, 100, 105, 110

(citing Greene Decl. ¶¶ 6-20).  According to Mr. Greene, Chelsea Brewing suffered financially

due to the September 11, 2001 attacks, the 2008 financial crisis and "other disasters."  Greene

Decl. ¶¶ 6-20.  Defendant also requests that the Court take judicial notice of the fact that these

events created "detrimental financial situations" affecting lower Manhattan.  Def.'s Opp. 2.

### B.  Defendant's FUTA Tax Liabilities

 Chelsea Brewing is required to pay FUTA taxes and file FUTA returns on an annual

basis, through IRS Form 940.  Pl.'s 56.1 Stmt. ¶ 2.  The Government asserts, based upon IRS

records, that Chelsea Brewing has an outstanding balance of unpaid FUTA taxes, including

interest and penalties, as follows[7]:

| FUTA Tax Period End Date | Amount Due |
|---|---|
| December 31, 2007 | $2,453.07 |
| December 31, 2008 | $2,314.64 |
| December 31, 2009 | $2,633.99 |
| December 31, 2010 | $2,970.42 |
| **TOTAL** | **$10,372.12** |

 Defendant challenges the late payment penalties assessed by the IRS for its FUTA taxes

based on the same reasonable cause grounds already described, but does not otherwise dispute

---

[7] Pl.'s 56.1 Stmt. ¶¶ 115, 120, 125, 130, 132.

the Government's calculations of its FUTA tax liabilities.  Def.'s Resp. Pl.'s 56.1 Stmt. ¶¶ 115,

120, 125, 130, 132 (citing Greene Decl. ¶¶ 6-20).[8]

### C.  The Instant Action

Plaintiff filed the complaint in this action on March 1, 2012.  Doc. 1.  Plaintiff submits

that it is now entitled to partial summary judgment[9] on its claims concerning Chelsea Brewing's

outstanding FICA and FUTA tax liabilities, which, as of September 23, 2013, totaled

$841,498.79.  Gov't Mem. L. 1, Doc. 20; Def.'s Resp. Pl.'s 56.1 Stmt. ¶¶ 131-32.  The

Government primarily argues that summary judgment is warranted because the IRS's assessment

of Defendant's tax liabilities is presumptively valid, and Defendant "has not and cannot prove

the correct amount of the taxes owed."  *Id.*

Defendant argues that the Court should deny Plaintiff's motion because (1) the applicable

statute of limitations bars collection of unpaid taxes for the period ending September 30, 2001;

(2) the Government has failed to demonstrate the accuracy of the amounts sought as FICA taxes;

(3) a fact issue remains regarding whether the wage amounts reported on Defendant's tax forms

include unpaid wages; and (4) a fact issue remains regarding whether Chelsea Brewing has

---

[8] While Defendant disputes the Government's assertion that it failed to request a collection due process hearing after receiving a notice of intent to levy and a collection due process notice regarding FUTA taxes for the 2007 tax year, in that Defendant claims that the Government's own records show that the IRS timely received a collection due process request from Chelsea Brewing on January 14, 2009 (Def.'s Resp. Pl.'s 56.1 Stmt. ¶ 114), Defendant makes no argument regarding the significance of this discrepancy.  Yet, Defendant does not challenge the fact that the same IRS records documenting its January 14, 2009 request also reveal that it ultimately waived judicial review or withdrew its hearing request.  *See* Gould Decl. Ex. 43 at USA717.  Moreover, Mr. Gould's Declaration states that his representations that Defendant "did not request a Collection Due Process Hearing"—such as the representation disputed by Defendant—include instances where the matter was otherwise resolved without a hearing.  *Id.* n.1.

[9] The complaint seeks unpaid tax liabilities resulting from Chelsea Brewing's alleged failure to comply with its obligations under FICA and FUTA, as described herein, as well as its failure to timely file certain W-2s for the 2007 and 2008 tax years (the "W-2 Claims").  Plaintiff seeks summary judgment with respect to all of its allegations except the W-2 Claims.  Plaintiff withdrew its claims concerning Chelsea Brewing's W-2s for the 2007 tax year, and is "still determining" whether Chelsea Brewing properly filed its W-2s for the 2008 tax year.  Gov't Mem. L. 2 n.1.

shown reasonable cause for failure to pay and deposit the taxes and penalties at issue.  Def.'s Opp. 1, 3.

## II.    Legal Standard

### A.  Rule 56

Generally, in accordance with Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a).  "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)).  A fact is "material" if it might affect the outcome of the litigation under the governing law. *Id.*  The party moving for summary judgment is first responsible for demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Saenger v. Montefiore Med. Ctr.*, 706 F. Supp. 2d 494, 504 (S.D.N.Y. 2010) (internal quotation marks omitted) (quoting *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008)).

In deciding a motion for summary judgment, the Court must "'construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant.'" *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir. 2004)).  However, in opposing a motion for summary judgment, the non-moving party may not rely on unsupported assertions, conjecture or surmise. *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14,

9

18 (2d Cir. 1995).  The non-moving party must do more than show that there is "some metaphysical doubt as to the material facts."  *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (internal quotation marks omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).  To defeat a motion for summary judgment, "the non-moving party must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor."  *Senno*, 812 F. Supp. 2d at 467-68 (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 256–57 (1986)).

## B.  Summary Judgment in Tax Collection Actions

The Internal Revenue Code authorizes the Government to bring civil actions in federal district court to obtain judgments for amounts assessed against taxpayers by the IRS.  26 U.S.C. § 7402(a); *see also, e.g.*, *United States v. Keff*, No. 07 Civ. 3549 (DAB) (GAY), 2011 WL 5023195, at *2 (S.D.N.Y. Sept. 16, 2011), *report and recommendation adopted*, No. 07 Civ. 3549 (DAB) (GAY), 2011 WL 5023012 (S.D.N.Y. Oct. 20, 2011).  In tax assessment actions, courts presume the validity of the IRS's tax calculations, including interest and penalties.  *United States v. Chrein*, 368 F. Supp. 2d 278, 282 (S.D.N.Y. 2005); *accord United States v. Sweeny*, 418 F. Supp. 2d 492, 496 (S.D.N.Y. 2006).  Such calculations "create a *prima facie* case of liability, such that the Government is entitled to have the assessment reduced to judgment unless the taxpayer overcomes the presumption by the IRS that the assessment is correct."  *United States v. Aiello*, No. 11 Civ. 1886 (SJ) (MDG), 2013 WL 3998468, at *3 (E.D.N.Y. Apr. 15, 2013), *report and recommendation adopted*, No. 11 Civ. 1886 (SJ) (MDG), 2013 WL 2383001 (E.D.N.Y. May 30, 2013) (internal citations and quotation marks omitted); *Sweeny*, 418 F. Supp. 2d at 496.

Accordingly, the defendant bears the burden of proving the invalidity of the tax assessment by a preponderance of the evidence.  *United States v. Deville*, No. 06 Civ. 2781

(AKH), 2007 WL 2119865, at *2 (S.D.N.Y. July 23, 2007) (citing *Pizzarello v. United States*, 408 F.2d 579, 583 (2d Cir. 1969); *Chrein*, 368 F. Supp. 2d at 282); *see also United States v. McCombs*, 30 F.3d 310, 318 (2d Cir. 1994) ("A taxpayer who wishes to challenge the validity of the assessment … 'bears the burdens both of production and of persuasion.'") (citation omitted); *R.E. Dietz Corp. v. United States*, 939 F.2d 1, 4 (2d Cir. 1991) (same).  To survive a motion for summary judgment, the taxpayer must not only demonstrate that the IRS incorrectly assessed the amount owed, but also submit proof of the correct amount of the tax.  *Chariot Plastics, Inc. v. United States*, 28 F. Supp. 2d 874, 882 (S.D.N.Y. 1998) (citing *United States v. Janis*, 428 U.S. 433, 440–41, (1976)) (granting motion for partial summary judgment where taxpayer failed to prove IRS's assessment was incorrect or show correct amount of tax).  Conclusory denials fail to create a genuine issue of material fact as to the accuracy of a tax assessment; the defendant must cite "specific evidence" indicative of the "proper amount of his tax liability."  *O'Callaghan v. United States*, 943 F. Supp. 320, 327 (S.D.N.Y. 1996).

III.   **Discussion**

   A. **The Court Denies Plaintiff's Motion with respect to the Tax Period Ending September 30, 2001**

The parties do not dispute that this action is subject to a 10-year statute of limitations.

The Internal Revenue Code provides that:

> Where the assessment of any tax imposed by this title has been made within the period of limitation properly applicable thereto, such tax may be collected by levy or by a proceeding in court, *but only if the levy is made or the proceeding begun … within 10 years after the assessment of the tax …..*

26 U.S.C. § 6502(a)(1) (emphasis added).  Rather, the dispute centers on two aspects of the statutory period:  (1) when the clock began to run to run; and (2) the tolling effect of three installment agreements entered into between the parties for that tax period.  Defendant contends

11

that the applicable statute of limitations for offenses relating to the tax period ending September 30, 2001 began to run on the date when Chelsea Brewing filed its return:  October 31, 2001. Def.'s Opp. 3.  The Government argues that the statute of limitations began to run on the date of tax assessment by the IRS, December 10, 2001.  Pl.'s 56.1 Stmt. ¶¶ 7-12.  Contrary to Defendant's assertion, the express terms of section 6502(a) clearly grant the IRS ten years from *the date of assessment*—here, December 10, 2001—to collect unpaid taxes.  *See, e.g.*, *Rosenbloom v. C.I.R.*, 101 T.C.M. (CCH) 1669 (T.C. 2011).  Accordingly, in the absence of any tolling, the deadline for the Government to bring a collection action for the tax period ending September 31, 2001 was December 10, 2011.

The instant action was commenced on March 1, 2012, 82 days after the limitations period.  However, the Government next argues that, because Defendant defaulted on three installment agreements entered into during the limitations period, pursuant to the Internal Revenue Manual ("I.R.M."), the original "CSED," meaning, "Collection Statute Expiration Date"—December 10, 2011—can be extended 90 days, to March 9, 2012.  *Id.* ¶¶ 13-14.  This is so, the Government argues, because the I.R.M. allows for a 30-day extension of the applicable time period for collection upon the termination date of an installment agreement.  Gould Decl. Ex. 2 (I.R.M. 5.1.19.3.5).  I.R.M. 5.1.19.3.5 provides that the CSED is suspended during:  "the time the proposed installment agreement is pending, thirty days following the rejection of an installment agreement, thirty days following termination of an installment agreement, and any appeal of the termination or rejection of the installment agreement."  I.R.M. 5.1.19.3.5, 2007 WL 8313899.  Without citing any additional authority, the Government reasons that this provision of the I.R.M. supports a conclusion that "when there are three terminated installment agreements, as is the case here, the IRS may lawfully add ninety days to the [statute of limitations] period (*i.e.*

12

30 days for each terminated agreement)."  Gov't Reply Br. 6.  In response, Defendant contends that the I.R.M. is not controlling law, that the termination of an installment agreement is "synonymous" with default, and that termination of an installment agreement only tolls the collection period 30 days.  Def.'s Opp. 4-7.

The Court rejects the Government's reading of the I.R.M. and finds that Chelsea Brewing's outstanding tax liability for the period ending September 30, 2001 cannot be collected due to the expiration of the applicable limitations period.  In the first place, the I.R.M. is non-binding authority.  *See, e.g.*, *Rhone-Poulenc Surfactants & Specialties, L.P. v. Commissioner*, 114 T.C. 533, 543 n.16 (2000).  Secondly, a plain reading of the I.R.M. does not explicitly allow for the aggregation of the 30-day extensions in the manner proposed by the Government, and the Government has not cited any additional authority or case law in support of its theory. Moreover, the IRS records proffered in support of its position do not sufficiently indicate when the installment agreements were entered into and terminated, nor do they describe any of the terms of the installment agreements.

Accordingly, Plaintiff's motion for partial summary judgment is DENIED with respect to the FICA tax period ending September 30, 2001, but only to that extent.

### B.  Summary Judgment is Granted for All Remaining Tax Periods At Issue

The Court grants the Government's motion for partial summary judgment with respect to the balance of the tax periods at issue.  Chelsea Brewing openly admits that it owes the IRS unpaid taxes for every period at issue in this action.  In spite of repeated notices of intent to levy and collection due process notices, Chelsea Brewing failed to comply with its tax obligations. Because Defendant merely asserts that the IRS got it wrong, but has not offered any competent evidence of the proper amount of taxes it owes, Defendant has failed to overcome the

presumption of validity accorded to the IRS's assessments.  *Chariot Plastics*, 28 F. Supp. 2d at 881-82; *Keff*, 2011 WL 5023195, at *2; *Chrein*, 368 F. Supp. 2d at 282.

Defendant's claim that its own "accounting error"—which apparently recurred for several years, from 2008 to 2011—caused it to incorrectly report as much as $35,000 worth of uncashed checks as wages on its tax forms fails to provide proof of what, if any, alternative amount of tax liability it owes.  Def.'s Opp. 10-11.  Although Defendant claims that it is in the process of gathering documentation of these uncashed checks, and asks the Court for additional time to present such evidence, the Court will not reopen discovery at this late juncture.  *Id.*

Defendant's argument that the Government has uniformly over-assessed Chelsea Brewing's FICA liabilities for all periods at issue is also unavailing.  *Id.* at 9-10.  Although the Government refers to all taxes included on Form 941 as "FICA taxes" in the complaint as well as its briefing, it is plain that the purpose of this action is to collect Chelsea Brewing's outstanding liabilities for all taxes reported on Form 941 returns, including FICA and non-FICA liabilities. Gov't Reply Br. 9-10 (citing Compl. ¶¶ 10, 12-30, 32).  Indeed, the complaint includes allegations concerning additional penalties for failure to deposit taxes reported on Form 941, failure to timely file taxes and "dishonored payments" (bounced checks)—not just claims for failure to pay FICA taxes.  *See, e.g.*, Compl. ¶¶ 10-11.  Defendant's argument therefore does not create a genuine dispute.

Finally, the Court finds that Defendant's reasonable cause defense lacks merit.  On the theory that, "where the payment of the tax would result in the default of the company, reasonable cause for failure to pay has been shown," Defendant claims that it had reasonable cause for its failure to comply with federal tax law because the September 11, 2001 attacks, natural disasters and the 2008 financial crash created a "precarious financial condition" whereby the Defendant

14

could not afford to both pay its taxes and stay in business.  Def.'s Opp. 12-13.  According to

Defendant, these tragedies created a Scylla to the Charybdis of its tax obligations.  *See, e.g.*,

Greene Decl. ¶ 15 ("Chelsea struggled through the tax periods in question, yet unfortunately

rarely having [sic] the funds to pay the tax obligations in full."); *id.* ¶ 16 ("Chelsea was never

able to recover from the financial decimation that accrued from the September 11 attacks … and

was also affected by other disasters during the years in question.").

The IRS imposes mandatory penalties for the failure to file returns, pay taxes, or deposit

employment taxes unless the taxpayer can show that "reasonable cause" and not "willful

neglect" can explain such failure.  26 U.S.C. §§ 6651(a)(2) and 6656(a).  In *United States v.*

*Boyle*, the Supreme Court defined "willful neglect," in the context of section 6651, as "a

conscious, intentional failure or reckless indifference."  469 U.S. 241, 245 (1985).  Put

differently, "the taxpayer must show that the failure to file a return timely was the result 'neither

of carelessness, reckless indifference, nor intentional failure.'"  *E. Wind Indus., Inc. v. United*

*States*, 196 F.3d 499, 504 (3d Cir. 1999) (citations omitted).  With respect to what constitutes

"reasonable cause," the Treasury Regulations provide that:

> If the taxpayer exercised ordinary business care and prudence and was
> nevertheless unable to file the return within the prescribed time, then the delay is
> due to a reasonable cause.  A failure to pay will be considered to be due to
> reasonable cause to the extent that the taxpayer has made a satisfactory showing
> that he exercised ordinary business care and prudence in providing for payment of
> his tax liability and was nevertheless either unable to pay the tax or would suffer
> *an undue hardship* (as described in § 1.6161–1(b) of this chapter) if he paid on the
> due date.  In determining whether the taxpayer was unable to pay the tax in spite
> of the exercise of ordinary business care and prudence in providing for payment
> of his tax liability, consideration will be given to all the facts and circumstances
> of the taxpayer's financial situation, including the amount and nature of the
> taxpayer's expenditures in light of the income (or other amounts) he could, at the
> time of such expenditures, reasonably expect to receive prior to the date
> prescribed for the payment of the tax … A taxpayer will be considered to have
> exercised ordinary business care and prudence if he made reasonable efforts to

conserve sufficient assets in marketable form to satisfy his tax liability and nevertheless was unable to pay all or a portion of the tax when it became due.

26 C.F.R. § 301.6651–1 (emphasis added). The term "undue hardship" signifies more than an inconvenience to the taxpayer; "[i]t must appear that substantial financial loss, for example, loss due to the sale of property at a sacrifice price, will result to the taxpayer from making payment on the due date of the amount with respect to which the extension is desired." 26 C.F.R. § 1.61611(b).

It is plain that these regulations require courts to analyze a taxpayer's particular financial situation in order to assess whether it has exercised ordinary business care and prudence in responding to competing financial obligations. *Fran Corp. v. United States*, 164 F.3d 814, 819 (2d Cir. 1999); *see also E. Wind Indus.*, 196 F.3d at 507-08 ("We recognize that it will be the rare case where the government is made the 'unwilling partner in a floundering business' ... without the employer incurring the duty to pay a penalty for having made such a choice, but it nonetheless remains for the court in each case to weigh all of the factors identified in the Regulations."). Here, however, Defendant does not offer any details concerning how the 9/11 terrorist attacks, 2008 financial crisis, or any other event created a "precarious" financial condition; Chelsea Brewing does not endeavor to calculate or even roughly estimate the losses that it suffered.

With respect to the September 11, 2001 attacks, Mr. Greene represents that Chelsea Brewing closed for a 90-day period after September 11, during which it paid its "regular employees its regular wages even though no work could be performed," provided "meals, beverages and solace to first responders," and bore the (unspecified)

16

costs of such operations on its own, without any assistance from the City of New York. Greene Decl. ¶¶ 8-14.  Though Mr. Greene contends that Chelsea Brewing "was never able to recover" from its post-9/11 "financial decimation" (*id.* ¶ 16), Defendant has failed to provide any evidence to quantify this "decimation."   Thus, the record lacks any evidence from which the Court might conclude that Chelsea Brewing "exercised ordinary business care and prudence in responding to competing financial obligations."  *Fran Corp.*, 164 F.3d at 819.  Moreover, and tellingly, Defendant *timely complied* with its tax obligations for *every quarter* between September 2001 and the third quarter of 2004, a three-year period in the immediate aftermath of the 9/11 attacks.  Supp. Gould Decl. ¶¶ 28-29.  Such a record suggests that the Defendant was not as decimated as it now asserts.

Likewise, while Chelsea Brewing submits that the financial crisis of 2008—a globally significant event that occurred seven years later—"saw a grave reduction of larger corporate clients … further forcing Chelsea into deficit" (Greene Decl. ¶ 16), the record is devoid of any evidence of Defendant's risk of default, and the Court cannot assess the impact of Defendant's vague professed loss of corporate clients in the absence of any evidence regarding Chelsea Brewing's net revenue, profits or losses, or which quarters in particular the financial crisis impacted.

Finally, Chelsea Brewing argues that Hurricane Sandy caused it severe damage, but as Defendant acknowledges, this event occurred *after* the time period relevant to the instant assessment action.  *Id.* ¶¶ 17-20.

Most significantly, Defendant has failed to adduce any evidence upon which the Court may conclude that Chelsea Brewing exercised ordinary business care and prudence in managing its tax and financial obligations.  Defendant's conclusory assertion that

17

compliance with its tax obligations would have "crippled Chelsea Brewing's ability to stay open and function" is flatly insufficient. *Senno*, 812 F. Supp. 2d at 467-68 (citing *Anderson*, 477 U.S. at 256–57) (to defeat a motion for summary judgment, "the non-moving party must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor."); *Stevens Technologies, Inc. v. C.I.R.*, 107 T.C.M. (CCH) 1067 (T.C. 2014) (finding that, based on the "scarcity of details" and "murky" record provided, the court could not conclude that competing financial obligations asserted by the defendant created reasonable cause to avoid tax obligations).[10]

Accordingly, the Court GRANTS the Government's motion for partial summary judgment reducing to judgment Chelsea Brewing's tax liabilities, totaling $725,934.60 as of September 23, 2013, plus whatever interest has accrued since then.[11]  Compl. ¶ 35(a) (seeking interest and statutory additions lawfully accrued since March 1, 2012).

---

[10] The two cases cited by Chelsea Brewing—both decided by courts outside of this Circuit—are not to the contrary. In *In re Pool & Varga, Inc.*, the court found that the evidence presented by the debtor—including, *inter alia*, specific testimony concerning the amount of money needed by the business per month to break even, the reasons why the business's revenue fell short of that amount, and the essential roles of the company's four employees (rendering layoffs impossible)—adequately demonstrated that the business would have collapsed or suffered irreparable harm if it had paid its taxes in full.  60 B.R. 722, 726-28 (Bankr. E.D. Mich. 1986).  In *In re Arthur's Industrial Maintenance, Inc.*, the debtor carried its burden of establishing reasonable cause based upon a record that included testimony from the debtor's principal and the debtor's statements of income and operating costs for specific fiscal quarters, which showed that the debtor's expenses exceeded its income and that its expenditures were necessary and reasonable.  No. 89-01190, 1992 WL 132563, at *8 (Bankr. W.D. Va. Apr. 9, 1992), *aff'd sub nom. In re Arthur's Maint., Inc.*, 89-01190, 1993 WL 79206 (W.D. Va. Jan. 7, 1993).  "Importantly," the debtor nonetheless managed to make significant partial payments of its taxes.  *Id.*  No specific or comparable facts have been presented here.

[11] As the Court denied summary judgment with respect to Chelsea Brewing's unpaid liabilities from 2001, the Court subtracted $115,564.19, the amount due for the FICA tax period ending September 30, 2001, from $841,498.79, the total amount owed as of September 23, 2013.

**IV.    Conclusion**

For the reasons set forth above, Plaintiff's motion for partial summary judgment is GRANTED in part and DENIED in part. The Clerk of the Court is respectfully directed to terminate the motion, Doc. 18.

The Government is directed to submit a letter to the Court, copying Defendant, by **August 8, 2014** indicating whether it intends to pursue its outstanding claims.

It is SO ORDERED.

Dated:    July 18, 2014
          New York, New York

                                        Edgardo Ramos, U.S.D.J.