UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

                Plaintiff,

– against –

CHELSEA BREWING COMPANY, LLC,

                Defendant.

**OPINION AND ORDER**

12 Civ. 1544 (ER)

---

Ramos, D.J.:

      The United States of America ("Plaintiff" or the "Government") brought the instant action to "reduce to judgment," *i.e.*, collect, the unpaid taxes, penalties, interest and fees assessed by the Internal Revenue Service ("IRS") against Chelsea Brewing Company, LLC ("Chelsea Brewing" or the "Defendant") for its failure to comply with its tax obligations under the Federal Insurance Contributions Act ("FICA"), 26 U.S.C. § 3111(a), and the Federal Unemployment Tax Act ("FUTA"), 26 U.S.C. § 3301, for multiple tax periods dating back to 2001. Compl., Doc. 1.

      By Opinion and Order dated July 18, 2014, the Court granted partial summary judgment in the Government's favor with respect to all periods at issue except for the FICA tax period ending September 30, 2001. Slip Op., Doc. 34. The Court held, *inter alia*, that the authority cited by the Government—chiefly, the Internal Revenue Manual ("I.R.M."), which is non-binding—failed to establish that the ten-year statute of limitations should be tolled to permit collection of Defendant's unpaid liabilities for the September 30, 2001 FICA tax period.

      Currently before the Court is the Government's motion for reconsideration of that decision. Doc. 35. The Government submits that its own "scrivener's error" caused the Court to

overlook controlling authority.  The Government points out that, in its reply brief, it supplemented its reliance on the I.R.M. with a citation to the Internal Revenue Code ("I.R.C."), which—unlike the I.R.M.—is binding.  "Unfortunately," however, the Government's reply brief "cit[ed] to a non-existent 26 U.S.C. § 6311(k)(2) instead of the controlling statute, 26 U.S.C. § 6331(k)(2)."  Gov't Mem. 3, Doc. 36.  This error caused the Court to conclude that the Government failed to offer any controlling authority in support of its tolling argument.

The Government now asserts that, because the provision that it intended to cite in its reply brief, 26 U.S.C. § 6331(k)(2), prohibits the Government from collecting taxes for thirty days following the termination of an installment agreement, and because the undisputed evidence shows that Chelsea Brewing entered into, and terminated, three installment agreements during the relevant timeframe, the limitations period for collecting Chelsea Brewing's unpaid tax liabilities for the period ending September 30, 2001 should have been tolled ninety days.[1]  The Government further argues that the Court should reconsider its ruling in the interests of justice.

For the reasons set forth below, the motion is GRANTED.

**I.   Background[2]**

As of September 23, 2013, Defendant's outstanding balance of tax liabilities for the September 30, 2001 FICA tax period, including interest and penalties, totaled $115,564.19.  Pl.'s 56.1 Stmt. ¶ 15, Doc. 22.  Neither party contests the Court's previous determination that, absent tolling, in accordance with 26 U.S.C. § 6502(a)(1), the deadline for the Government to bring a collection action for this debt was ten years from the date of the IRS's assessment:  December

---

[1] In accordance with 26 U.S.C. § 6159(a), the Secretary of the Treasury may enter "written agreements with any taxpayer under which such taxpayer is allowed to make payment on any tax in installment payments if the Secretary determines that such agreement will facilitate full or partial collection of such liability."  26 U.S.C. § 6159(a).

[2] The Court limits its discussion of the facts to those relevant to the instant motion.

10, 2011.  Gov't Mem. 2; Def.'s Opp. 2, Doc. 37.  The Government commenced the instant action 82 days after the statutory deadline, on March 1, 2012.  *See* Compl.

The Government asserts that its claim to collect Chelsea Brewing's unpaid debt for the September 30, 2001 tax period is timely because Chelsea Brewing entered into three installment agreements with the IRS, all three of which were ultimately terminated.  Gov't Mem. 3-6; Gov't Reply Br. 4-5, Doc. 38.  Because the limitations period for a tax collection action is tolled for thirty days following the termination of an installment agreement, the Government argues, the ten-year limitations period should have been tolled for ninety days—thirty days per agreement—extending the Government's deadline to file the instant collection action to March 9, 2012.

Chelsea Brewing does not deny that it owes unpaid FICA taxes for the period ending September 30, 2001; rather, it maintains that collection of this debt is time-barred.  Pl.'s 56.1 Stmt. ¶ 15.  Defendant argues that, factually, the Government's proof fails to demonstrate (1) that the IRS entered three distinct installment agreements with Chelsea Brewing; and (2) that such installment agreements were "terminated."  Def.'s Opp. 3-4.  Defendant also claims, incorrectly, that the Court already found that the Government failed to prove that "installment agreements were entered into."  *Id.* at 5.

### A.  The Court's Summary Judgment Opinion

Based on the record, the parties' respective summary judgment briefs and the authorities cited therein, the Court determined, *inter alia*, that, because the I.R.M. is non-binding, and because the Government failed to provide additional authority in support of its position, that it had to reject the Government's argument that its deadline to bring a collection action should be tolled ninety days.  Slip Op. 13.  The Court also noted that the Government's records did not "sufficiently indicate *when* the installment agreements were entered into and terminated, nor do

3

they describe any of the terms of the installment agreements," *id.* (emphasis added), but did not make factual findings regarding the duration or number of the installment agreements.

### B.  Evidence Presented Regarding Installment Agreements

Patrick Greene, the managing partner of Chelsea Brewing, testified at his Rule 30(b)(6) deposition that he was generally aware that Chelsea Brewing had entered into multiple installment agreements with the IRS, but could not recall how many such agreements, their dates, or whether Chelsea Brewing defaulted on some or all of them.  Boeving Decl. Ex. A (Dep. Tr. 17:13 – 19:25, Jul. 1, 2013), Doc. 19.  However, he also admitted that he was not aware of any installment agreement on which Chelsea Brewing did *not* default.  *Id.* at 18:15 – 18:18.

To establish that Defendant entered, and terminated, three separate installment agreements with the IRS, in its summary judgment briefing, the Government submitted Chelsea Brewing's IRS Account Transcript for the FICA tax period ending September 30, 2001, which states, in relevant part, as follows (*see* Gould Decl. Ex. 3 at USA675-76, Doc. 21):

| Code | Explanation of Transaction | Date |
| --- | --- | --- |
| 971 | Installment agreement established | 5-31-2002 |
| 971 | No longer in installment agreement status | 7-28-2003 |
| 971 | Tax period blocked from automated levy program | 10-20-2003 |
| 582 | Lien placed on assets due to balance owed | 10-3-2003 |
| 971 | Installment agreement established | 11-14-2003 |
| 971 | Installment agreement established | 11-25-2003[3] |
| 971 | No longer in installment agreement status | 3-8-2004 |
| 582 | Lien placed on assets due to balance owed | 3-3-2006 |
| 971 | Installment agreement established | 4-13-2006 |
| 971 | Pending installment agreement | 1-23-2008 |
| 971 | No longer in installment agreement status | 3-31-2008 |
| 971 | Collection due process Notice of Intent to Levy – return receipt signed | 6-12-2008 |
| 971 | Collection due process Notice of Intent to Levy – issued | 6-12-2008 |

---

[3] Mr. Gould represents that the installment agreement entry for November 25, 2003 is duplicative of the November 14, 2003 entry.  Gould Decl. n.4.

Additionally, the Government furnished an IRS Certificate of Official Record for Chelsea Brewing for the tax period ending September 30, 2001, which documents installment agreements on December 19, 2001, May 31, 2002, November 14, 2003, November 25, 2003 and April 13, 2006, and includes entries on July 28, 2003, March 8, 2004, and March 31, 2008 stating "reverses active installment agreement."  *See* Gould Decl. ¶ 3, Ex. 1.  In a supplemental declaration to the Court, Spencer Gould, the IRS agent assigned to this case, *id.* ¶ 1, further explained that the notations "reverses active installment agreement" and "no longer in installment agreement status" indicate that the taxpayer has defaulted on the installment agreement and that it was terminated.  Supp. Gould Decl. ¶¶ 19-20, Doc. 33.  Mr. Gould also attested that the IRS provided Defendant with written notice 30 days prior to termination of each of the three installment agreements in this case, as is customary.  *Id.* ¶ 21.  Chelsea Brewing does not dispute the substance of Gould's Supplemental Declaration, but now argues that the Court should disregard it because (1) Gould did not specify that he had personal knowledge that Chelsea Brewing and the IRS entered into, and terminated, three separate installment agreements for the period ending September 30, 2001 and (2) the Government provided Gould's Supplemental Declaration as part of its reply brief, thus Defendant could not have earlier raised this argument.  Def.'s Opp. 3-4.

Although the Government did not provide the Court with copies of any notice of termination letters that were actually sent to Chelsea Brewing, it supplied copies of "IRS Integrated Data Retrieval System Masterfile" records (the "IDRS Records") with its reply brief (Supp. Gould Decl. Ex. E).  Mr. Gould stated that (1) presence of the code "CP 523" in the IDRS Records indicates that the IRS issued notices of termination for each of the three installment agreements, and (2) the code "TC 971 AC 163" shows that the three agreements were

5

respectively terminated on July 28, 2003, March 8, 2004 and March 31, 2008.  *Id.* ¶ 24, Ex. E at USA727-30.  Chelsea Brewing attacks the IDRS Records on hearsay grounds.  Def.'s Opp. 4.

## II.    Legal Standard

Motions for reconsideration are governed by Local Civil Rule 6.3 and Rule 60(b) of the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 60(b).  The standard for granting a motion for reconsideration is "strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked."  *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (citation omitted) (addressing a Rule 59 motion).  "A motion for reconsideration should be granted only when the [party] identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."  *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 104 (2d Cir. 2013) (citation and internal quotation marks omitted); *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).  It is "not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple."  *Analytical Surveys*, 684 F.3d at 52 (citation omitted).  The decision to grant or deny the motion for reconsideration is within "the sound discretion of the district court."  *Aczel v. Labonia*, 584 F.3d 52, 61 (2d Cir. 2009).

## III.    Discussion

At the outset the Court notes that, in its summary judgment briefing, the Government's sole support for its tolling argument consisted of non-binding authority:  one subsection of the I.R.M.  The Government did not cite any case law to back its tolling argument, and, although it cited "26 U.S.C. § 6311(k)(2)" exactly once, that provision was, as the Government acknowledges, "[u]nfortunately" non-existent.  Gov't Mem. 3.

Nevertheless, under the circumstances, where the Government's brief contained a typographical error in its attempted citation to controlling authority, the Court exercises its discretion to consider its motion for reconsideration in order to correct an error of law and thereby prevent manifest injustice. The correct provision of the I.R.C.—section 6331(k)(2)— indeed prohibits the Government from issuing levies, or initiating collection actions, for a period of thirty days following the termination of an installment agreement. 26 U.S.C. § 6331(k)(2)(D). Additionally, section 6331(i)(5) provides that "[t]he period of limitations under section 6502 shall be suspended for the period during which the Secretary is prohibited under this subsection from making a levy." 26 U.S.C. § 6331(i)(5); Gov't Mem. 3 (citing *id.*). Although the Court has not found any cases in this Circuit construing the relevant statutory provisions, the Court finds persuasive the out-of-Circuit cases identified by the Government in its motion to reconsider, which recognize that section 6331 may extend the statute of limitations for a collection action either during the pendency of an installment agreement or for the thirty days immediately following its termination. Gov't Mem. 4 (citing *Seagrave v. United States*, 221 F. App'x 457, 459 (7th Cir. 2007); *United States v. Reardon*, No. 09 Civ. 11675, 2011 WL 4026890, at *4 (E.D. Mich. Sept. 12, 2011); *United States v. Walsh*, 702 F. Supp. 2d 6, 9 (D. Maine 2010)).

Contrary to Defendant's assertions (Def.'s Opp. 5), the Court did not previously find that the Government failed to sufficiently prove that Chelsea Brewing entered into installment agreements with the IRS. The Court now concludes that Defendant has failed to raise any genuine dispute of material fact that Chelsea Brewing entered three installment agreements with the IRS that were each then terminated. While Defendant argues that the IDRS Records are hearsay, the Court finds that they are public records which Defendant has provided no reason to doubt, and consequently may be admitted pursuant to Rule 803(8) of the Federal Rules of

7

Evidence. Fed. R. Evid. 803(8); Gov't Mem. 5-6.[4] Moreover, though Chelsea Brewing attempts to challenge Officer Gould's Supplemental Declaration by speculating that he did not base its contents on personal knowledge, in light of Gould's position as the IRS agent responsible for this case, Supp. Gould Decl. ¶ 1, his personal knowledge may reasonably be inferred. *United States v. Tocco*, 135 F.3d 116, 128 (2d Cir. 1998) (holding that the appropriate "test is 'whether a reasonable trier of fact could believe the witness had personal knowledge.'" (citation omitted)). Aside from questioning its foundation, Defendant does not otherwise controvert the substance of Gould's Supplemental Declaration, in which he clearly states that "[t]here were in fact three separate installment agreements," Supp. Gould Decl. ¶ 17, and "[n]otation of reversal of an active installment agreement … is meant to indicate termination of such [an] agreement[] has occurred." *Id.* ¶ 19. In any event, Gould's Supplemental Declaration largely echoed his initial declaration—which he also "made … based on personal knowledge and IRS records with which [he is] familiar," Gould Decl. ¶ 1—and in which he stated that, "with respect to th[e] [September 30, 2001] tax period, there [were] three instances where an installment agreement was reversed and terminated." *Id.* ¶ 11. Finally, although the precise terms and duration of these installment agreements remain unknown, the Government does not argue that the limitations period should be tolled for an amount of time equal to the pendency of the installment agreements; it merely submits that the limitations period should be tolled ninety days based upon the termination of each of the three installment agreements. Gov't Reply Br. 3.

Plaintiff's motion for reconsideration is therefore GRANTED. Upon reconsideration, the Court finds that, because Defendant entered three installment agreements during the limitations period, which were then terminated, the Secretary would have been prohibited from collecting

---

[4] In the alternative, the IDRS Records may be admitted pursuant to Rule 803(6), as Gould certifies that they are records of a regularly conducted business activity. Fed. R. Evid. 803(6); Gov't Reply Br. App'x.

Defendant's debt for thirty days following the termination of each installment agreement. 26 U.S.C. § 6331(i)(5) and (k)(2). Accordingly, the original deadline to bring this case—December 10, 2011—can be tolled and extended ninety days, to March 9, 2012, rendering the instant action timely. Furthermore, because the Court solely denied the Government's motion for summary judgment with respect to the Government's claim to reduce to judgment Chelsea Brewing's unpaid tax liabilities for the period ending September 30, 2001 on statute of limitations grounds, the Court now GRANTS summary judgment in the Government's favor on this claim.

### IV. Conclusion

For the reasons set forth above, the Government's motion for reconsideration is GRANTED, and the Court GRANTS summary judgment in the Government's favor on its claim to collect Chelsea Brewing's unpaid tax liabilities for the period ending September 30, 2001, totaling $115,564.19 as of September 23, 2013, plus accrued interest. *See* Compl. ¶ 35(a); Pl.'s 56.1 Stmt. ¶ 15. The Clerk of the Court is respectfully directed to terminate the motion, Doc. 35.

The Court previously directed the Government to submit a letter to the Court, copying Defendant, indicating whether it intended to pursue its outstanding claims, *i.e.*, those pertaining to Chelsea Brewing's W-2s for the 2008 tax year (*see* Compl. ¶ 34; Mem. L. Supp. Mot. Partial Summ. J. 2 n.1, Doc. 20), by August 8, 2014; the Government failed to do so. The Court directs the Government to submit this letter by **October 10, 2014**.

It is SO ORDERED.

Dated:   September 26, 2014
         New York, New York

_____
Edgardo Ramos, U.S.D.J.